Pearson, J.
 

 What are the rights of the plaintiff as the owner of a public ferry, without reference to the exception in the deed of the defendant ? He may recover damages from any one who, without legal authority, erects a ferry across the water between the
 
 same point,
 
 or so near as to draw off
 
 *282
 
 bis custom. This is a right at common law, and is put on the ground that, as he is bound to "keep up the ferry, he is entitled to such profits as may accrue therefrom in consideration, and as a compensation, for his liability. Consequently any subtraction from the profits is wrongful, and is an injury to him. Herein the case of a ferry differs from setting up a trade, or school, near another; the tradesman or school-master is not bound to keep it up. 3 Black. Com. 219. His right of action is not confined to one who erects a ferry; it is extended, upon the same principle, to any one who,
 
 for pay,
 
 transports a person, or his effects, across the water between the same points, or so near as to draw off liis custom. The same principle extends to any one who thus transports
 
 without pay
 
 ; for the gist of the action is the drawing off his custom, and thereby subtracting from profits to which he is entitled. The injury to him is the same, whether the wrongful act be done for pay, or without pay.
 
 Blesset
 
 v. Hart, Willes’ Rep. 508 ;
 
 Tripp
 
 v. Frank, 4 Term Rep. 666. The important question, that upon which our case turns, is discussed in the latter case. The opinion is expressed that the persons must be those who wish to go along the road of which the ferry makes a part, so that the act of the defendant in transporting them a little above or below the ferry, is
 
 & fraud
 
 in evasion of the plaintiff’s rights, and it is decided that the action would not lie on that case, “ because the persons transported were substantially, and not colorably, carried over to a different place.” The plaintiff’s ferry was from Kingston to Ba/rton; the defendant carried the persons from Kingston to Barrow, two miles to the east of the former place. The persons did not wish to go to Barton, and the plaintiff was not bound to carry them to Barrow. The Court say
 
 “
 
 his right is commensurate with his duty;” as he was not bound to carry them to Barrow, he can not complain of the defendant for doing so. It would be unreasonable to require them to submit to the inconvenience of being carried first to Barton, and thence making their way to Barrow. So, the plaintiff’s
 
 customers
 
 are really those who wish to go from Kingston to Barton.
 

 
 *283
 
 In tbe assertion of tbis right, many difficulties were presented : "What distance was so near to a ferry as to draw off its custom? Who were customers? What damages was the plaintiff entitled to ? — the toll which the plaintiff would otherwise have received? — or such toll,
 
 minus
 
 the cost of transportation? Were these matters to depend on the leaning and feeling of each particular jury ? To remove these difficulties, the Act of 1761 (Eev. Code, ch. 101, sec. 30,) provides, that if any person shall, without authority, keep a ferry, or transport,
 
 for pay,
 
 any person, or his effects, across a river or water, within ten miles of a public ferry, he shall pay a penalty of two dollars for each offence, to be recovered by the nearest ferryman, &c. This statute recognises the common law right against a person who erects a ferry without authority, or transports a person, or his effects, for pay. The remedy is cumulative; it fixes the distance at ten miles; the damages at two dollars; and extends the statute remedy to all persons transporting
 
 for pay, without reference to their being customers.
 

 It was thought by some that the statute, by inference, denied the common law right against a person who transported any person without pay. The point was made by the case of
 
 Long
 
 v.
 
 Beard,
 
 3 Murph. Rep. 57. It is there held that the statute is cumulative in regard to the remedy, and left the common'law rights of ferrymen untouched; and it was decided that the plaintiff had a right of action against the defendant for erecting a
 
 free ferry
 
 within one mile of his ferry, and opening a road on both sides of the river leading to, and from the road of which his ferry made a part, to wit, from Salisbury on one side, to Thompson’s tavern on the other, and thence to Salem and Danville, whereby the plaintiff’s custom was drawn off, and his profits diminished,- by inducing horsemen, and other travellers, and wagons, and other carriages, passing and repassing from Salisbury to Thompson’s tavern, to go by the free ferry. The decision is put upon the ground that all horsemen, and other travellers, wagons, &c., passing and repass-ing between the
 
 termini
 
 of the road, are customers; so that,
 
 *284
 
 if such customers are drawn off, the distance of the new ferry from the old one is not material, and it only becomes so in reference to the question, is it so near as to draw off custom to which the old ferry is entitled ?
 

 The principle of that case extends to one who transports a person, or his effects,
 
 without pay,
 
 provided custom to which the plaintiff is entitled is substracted; but such facts must be alleged and proven, as show that the person transported was one who would, otherwise, have passed over the road of which the plaintiff’s ferry makes a part; in other words, that the
 
 t&rmmi
 
 of the plaintiff’s ferry were between the points of such person’s departure and destination — were in his route, and would have been passed by him, but for the defendant’s wrongful interference. Hall, J., calls attention to the fact, that every man who crosses a river at a point near a ferry, is not a customer of the ferry,
 
 “
 
 otherwise no person could set his neighbor across in a private boat.”
 

 "When it is recollected that the statute forbids the transportation of persons who are not customers, as well as those who are, it is easily seen why it is restricted to a transporting
 
 forpa/y.
 
 Had it extended to a transportation without pay of persons other than customers, it would have worked a grievous evil by interrupting neighborhood intercourse, and it was supposed that cases of gratuitous transportation of customers would rarely occur, and if it did, the common law remedy would correct it.
 

 Our case then, is narrowed to this — were the persons who were transported by the defendant, from Wilmington to the depot on the island, customers of the plaintiff’s ferry ? The
 
 tw'mvni
 
 of his ferry must be fixed by reference to the charters, and the purpose for which they were granted.
 

 Eagle’s island lies between Wilmington and the old town of Brunswick. It is some mile and a half in extent — low and marshy — fit for lice fields, and not passable by carriages, or horses. The purpose of granting the charter to Dry, in 1764, and continuing it to
 
 Smith,
 
 who had succeeded to his rights, in 1784, as is set out in the two acts or charters, was to get a
 
 *285
 
 road made across the island, so as to effect a communication, between tbe towns of "Wilmington and Brunswick. The road and the two ferries make one public highway from the one town to the other; the obligation to repair the road is the same as to keep up the ferries ; but it was expedient to subdivide the toll, and allow it to be taken for passing either ferry ; in the same way as toll gates are erected at convenient distances on a plank road, or turnpike, because persons might wish to cross the river at Wilmington, go over the road to the river opposite to Brunswick, and then go up the river without crossing it, or to cross from Brunswick, go over the road to the landing opposite Wilmington, and then go up the river, or leave their horses and vehicles at the landing, and cross over to Wilmington as
 
 foot
 
 passengers; and a penalty of twenty shillings is imposed for
 
 transporting, for pay,
 
 any person, &c., over either of the branches of the Oape Fear river,
 
 in order to Ms passing through the island.
 
 If we consider each ferry as a separate establishment, each still retains its connection with, and reference to, the road, and the
 
 termini
 
 of the ferry under consideration-, are the town of Wilmington and “ a point opposite Market street,”
 
 where the road leads of.
 
 This is the plaintiff’s landing — the place to which he is bound to carry persons, &e., and his customers are all persons who wish to cross from Wilmington to that place; these he is bound to serve ; but suppose a person wishes to go to a steam saw-mill on the island, half a mile from this point; the plaintiff is not bound to cany him there ; “ his rights are commensurate with his duties,” therefore, this person is not one of his customers. It would be ill service to take him to the landing place of the plaintiff, and leave him to get to the mill through the marsh, or hire a boat to take him up !
 

 The defendants’ depot is on the island; some little distance from the road, and “ the landing place ” of the plaintiff. The persons transported by the defendants from Wilmington to the island, did not wish to cross over the island, or to use the road, or to go to the plaintiff’s landing ; they wished to go to the defendants’ depot; but for it, they had no business, or de
 
 *286
 
 sire to go to the island, and their going was without reference to the plaintiff’s ferry, or the road; so they were not his customers.
 

 It is unnecessary to consider the fact that, for fifty years— ever since the island has been used for rice-fields, or other purposes — every person has been crossing over the river from Wilmington to the place on the island where his business called him, without objection' on the part of the plaintiff, or those under whom he claims: we have seen they have a perfect right to do so; they were not his customers. So the learning about
 
 “
 
 prescription ” and
 
 “
 
 dedication ” has no bearing. It is also unnecessary to consider the effect of the exception in the deed of the defendants. Eor, as the plaintiff has no cause of action without reference to the exception, that cannot giré him one.
 

 Pee Cueiam. Judgment affirmed.